**BALL et al. v. RIO GRANDE CANAL CO. et al. (No. 7002.)** *

(Court of Civil Appeals of Texas. San Antonio. Oct. 17, 1923. On Appellees' Motion for Rehearing, Nov. 14, 1923. On Appellants' Motion for Rehearing, Dec. 5, 1923.)

1. **Waters ·and water courses** ⬅⟾254—**Irrigation company's obligation to furnish water held sufficient consideration for contract.**

Irrigation companies are in their nature quasi public corporations, and their obligation to distribute water, when paid for, furnishes a sufficient consideration for a contract with a landowner and his subsequent assignees to pay a flat rate for such services whether the water be used or not.

2. **Waters and water courses** ⬅⟾254—**Irrigation company's sale of system held breach of contract to furnish water.** ·

Where an irrigation company, bound by contract to furnish water for a period of years, sold its system to an irrigation district created by Rev. St. arts. 4991–5011, and prohibited by Acts 1921 (1st Called Sess.) c. 46, § 2 (Vernon's Ann. Civ. St. Supp. 1922, art. 5107—41a), from assuming the obligation of other companies, the sale prevented the irrigation company from performing its contract and constituted a breach thereof.

3. **Waters and water courses** ⬅⟾254—**Irrigation company held entitled to recover pro tanto for water furnished before sale of system.**

That an irrigation company had disabled itself from performing its contract to furnish water to a landowner by sale of its system to an irrigation district did not prevent a recovery pro tanto in equity for services it had performed up to the time of sale.

4. **Waters and water courses** ⬅⟾254—**Judgment in suit for water charges held erroneous in failing to adjudicate rights of parties.**

In a suit on contract to recover for water furnished for irrigating a tract of land for a certain year, the claim having accrued on January 1st of that year against defendant L., the owner, and the land having been acquired during the year on foreclosure by defendant B. and another, the court erred, on decreeing a foreclosure and sale, in rendering a judgment in favor of B. against L. for all sums he might be forced to pay to protect his undivided interest in the tract; the proper judgment against L. being for any sum that B. might pay under the terms of the judgment to prevent the sale of the property, with a provision that the balance of the proceeds of sale after satisfying the claims be paid to B. ·  .

5. **Waters and water courses** ⬅⟾254—**Special defense, that absolute deed to irrigated lands was intended as security, cannot be asserted under general denial.**

A defense, in an action to recover for water furnished for irrigation, that a deed, though absolute on its face, was intended as mere security for a debt and involved no legal liability on grantee, being a special defense, could not be asserted under a plea of general denial.

6. **Waters and water courses** ⬅⟾254—**No· error, in action to recover for water furnished for irrigation, in excluding testimony that deed intended as a mortgage.**

In an action to recover for water furnished a tract of land for irrigation purposes, no error was committed in excluding testimony offered by one defendant that a deed to the premises, absolute on its face, by the original party to the water contract to him, was intended as a mortgage; the only pleading filed by such defendant being a general demurrer

---

⬅⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused January 23, 1924.

and a general denial, the defense requiring the bringing in of new parties, and the other parties to the action having a right to rely on the record title.

**7. Waters and water courses ☞156(1)—Contract to furnish water for irrigation held to grant easement enforceable against subsequent purchaser.**

A recorded contract, under which an irrigation company was required to furnish water for irrigation purposes to a tract of land, had the effect of granting an easement in favor of the land against the irrigation company subject to an obligation on the part of the owner and his successors in interest to pay yearly water charges, and it was enforceable either as a covenant created by mutual obligation running with the land, or in equity, against subsequent purchasers with notice, actual or constructive.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Action by the Rio Grande Canal Company and others against Thos. H. Ball and another. Judgment for plaintiffs. Defendants appeal. Reformed and affirmed.

Ball, Merrill & Ball, of Houston, and C. M. Robards, of San Antonio, for appellants.

Canales, Davenport & West and Graham, Jones, Williams & Ransome, all of Brownsville, for appellees.

COBBS, J. This suit was instituted by Rio Grande Canal Company, appellee, a Texas corporation, engaged in the business of furnishing water for irrigation purposes, seeking to recover of John T. Lomax the sum of $1,994.52 with 10 per cent. interest per annum from January 1, 1922, and 10 per cent. attorney's fees, based on a flat rate water charge under a prior written contract, for the year 1922, on 1,520 acres of land in Cameron county owned by John Lomax on January 1, 1922, and seeking foreclosure of the contract lien here provided for, in the written contract, on 1,448.46 acres of land embraced in the contract against John T. Lomax and against Thos. H. Ball and H. Masterson, Jr.

The cause was tried without a jury and resulted in a judgment establishing plaintiffs' debt for $2,173.47 with 10 per cent. interest from date of judgment, and the further sum of $217.35 as attorney's fees, and decreeing a foreclosure of the lien on the 1,448.46 acres with order of sale, with a decree in favor of Thos. H. Ball over against his codefendant, Lomax, for any and all sums that he may be forced to pay to protect his undivided interest in said tract of land.

Both defendants, now appellants, appealed to this court from said judgment. Briefly, the salient facts necessary for notice are that on November 19, 1912, the corporation entered into a written contract with Lon C. Hill, the then owner of the land, to irrigate 1,520 acres of land, excluding therefrom "such portions thereof as might on account of elevation or otherwise be impracticable to be irrigated from plaintiffs' system"; the pleading, however, only sought to foreclose the lien on 1,448.46 acres thereof.

The contract provided that the owner, for such service, should pay to Rio Grande Canal Company, its successors or assigns, for the right or privilege of demanding, taking, or using any water from said system, an annual rental or charge for each and every acre of said land, whether water is taken or not, of $3 per acre per annum, payable on the 1st day of January of each and every year in advance, which should bear interest at the rate of 10 per cent. per annum from January 1st of each year, with 10 per cent. additional as attorney's fees. It was alleged that the conditions and terms of the contract are appurtenant to the land and should run and bind said lands and the owners thereof and their assigns or legal representatives with the lien thereby expressly created by the terms of the contract upon said land, to secure the payment of said fixed water rent, which contract was duly and properly recorded in the records of the county where the lands are situated.

The petition then alleged the transfer of said property by mesne conveyance from Lon A. Hill to the defendant John T. Lomax, prior to January 1, 1922, and alleged that the said John T. Lomax, as the owner of said lands on that date, was liable to plaintiff for the fixed water charges provided in the contract as against 1,448.46 acres of land; that said water charge for the year 1922 was long past due and unpaid, except that the defendant H. Masterson, Jr., had on July 25, 1922, paid the sum of $2,350.86 and interest thereon from January 1, 1922, to the date of payment; that the claim for the balance of said water rent had been placed in the hands of attorneys for collection, and recovery was sought for the balance due, with interest and attorney's fees. The only pleading filed by John T. Lomax was a general demurrer and general denial.

Thos. H. Ball, besides demurrers, pleaded that he and H. Masterson, Jr., became the purchasers of the properties on the 5th day of September, 1922, at a foreclosure sale made by the sheriff of Cameron county on that date, and on the 7th day of November, 1922, the sheriff conveyed said lands to appellant and H. Masterson, Jr., in undivided portions of 4,648 acres to appellant and 5,352 acres to H. Masterson, Jr., and that said debt, if any, accrued against appellant John T. Lomax, and not against them, and any personal judgment rendered should be against John T. Lomax and not against them

who are the owners by purchase under a foreclosure sale.

It is not necessary here to set out other special defenses pleaded, since they will be discussed and disposed of in their order in the discussion of the assignments and questions of law raised thereupon. Appellant Ball requested that no further sum be had to run against the undivided interest of H. Masterson, Jr.; but, if any, it be made to run solely against his undivided interest.

Appellant Ball pleaded that on or about December, 1921, by an order of the commissioners' court of Cameron county, there was created the "Cameron County Water Improvement District No. 6," including the lands described in plaintiff's petition, and on the 14th day of September, 1922, the plaintiff conveyed its pumping plant, canals, and other irrigation property to said water improvement district No. 6, and thereby incapacitated itself from carrying out its agreement with Hill and the assignees to furnish water for irrigation for 25 years, and thereby created a breach of the contract; and further pleaded that such succeeding corporation was without legal authority to assume the obligations of said irrigation contract of November 19, 1912, being limited by law to the raising of funds for irrigation purposes. Further, that it did not furnish water for any part of the year beginning January 1, 1922, for irrigation purposes, and hence could not recover the flat rate charge for the whole of the year of 1922; that appellee having so breached the terms and conditions of the contract in the particulars named, appellants were absolved from the terms of said contract to pay said sums of money thereafter. The evidence is practically without dispute. Lon C. Hill was the owner when the contract was made November 19, 1912; November, 23, 1914, Lon Hill conveyed the land to H. Masterson, Jr.; March 22, 1919, H. Masterson, Jr., conveyed the land to John H. Hill; August 14, 1920, John A. Hill conveyed the land to John T. Lomax.

No water was furnished under the contract nor was any demand made therefor during the year 1922. While appellee may have been in a position to furnish water up to September 14 or 15, 1922, it was not in a position to furnish water after that time, and cannot recover any sum thereafter for water services because it had parted, by sale, with its properties to another corporation. It is immaterial whether the assessment had been made for the whole year or not, for by such sale the appellee placed itself in a position where it could not fulfill or perform its contract to furnish water were it demanded thereafter, even though the contract called for a flat rate for the entire period mentioned of 25 years from its date. This is not a suit, however, on the

quantum meruit; it is based on the contract as an entirety, but there is a prayer for general relief as follows:

"Plaintiff also prays for all such other and further relief, both general and special, which under the principles of law and equity it may show itself entitled to, and for all of which it will ever pray."

[1] It is the well-settled law that irrigation companies organized for the purpose of irrigating lands are, in their nature, quasi public corporations, and persons holding lands contiguous to their canals are entitled to receive water from such companies as a matter of right, when paid for, limited only by prior contracts or by such other limitations as are imposed by law. The obligations of an irrigation company impose upon itself a readiness to distribute water when required, if paid for, and this is in itself a sufficient consideration for a contract of a contiguous landowner to pay a flat rate for such service whether the water be used or not. So, then, it must follow as a legal sequence that Lon C. Hill, the original owner, and his subsequent assignees, had the same legal right to have appellee keep and maintain the canal during the life of the contract as it had to compel the payment of the water rate by the owner. While the contract here may be said not to be a permanent one, yet it is a contract, privilege, or easement running for a period of 25 years. West v. Giesen (Tex. Civ. App.) 242 S. W. 312.

[2, 3] Just a few days after appellant purchased the property at foreclosure sale (on September 14, 1922), the Rio Grande Canal Company sold its entire system to Cameron County Water Improvement Company, an irrigation district created by virtue of chapter 2 of title 73 of the Revised Statutes and the amendments thereto.

In such a case it cannot be presumed the successor corporation would carry out, in the face of the statutory law, its predecessor's obligations, because such an obligation, express or implied, would be directly in the face of our statute, which provides:

"No district created or existing or to be created under the provisions of this chapter shall have the right to become a party to, or purchase, or hold under or assign or seek to enforce or receive the fruits or benefits from any contract between any land owner and private canal company or corporation made prior to the formation of such district, but all rights and privileges owned or possessed by such district are those arising or inherent in such district by virtue of this chapter. The statutes of limitation of two years as well as the provisions hereof may be pleaded in bar of all actions for the recovery of water rents or other assessments accruing on land in such district prior to the formation of such district and cannot acquire or enforce any lien against such land fixed by any contract existing prior to the formation of such district, and cannot prosecute or cause to be prosecuted for it any

suit or cause of action or claim of any character for its use for the recovery of any such water taxes or assessments accruing prior to the formation of such district and cannot foreclose any lien on such lands by reason of such unpaid water assessments and taxes accruing prior to the formation of such district and cannot avail itself of any rights under any private contracts made with reference to said lands prior to the formation of such districts, and cannot be held liable for the breach, of any such contract." Acts 1921, 1st Call. Sess. p. 150 (Vernon's Ann. Civ. St. Supp. 1922, art. 5107—41a).

It is useless to discuss the reason that brought about such legislation. Its terms are plain and unambiguous, and we must give effect thereto.

While the Legislature has thus prohibited improvement districts from assuming the obligations of other companies, such as we are now considering, it has made a very generous provision for such districts for raising funds for its use, both by taxation and by special assessment and also by ordinary water charges.

' It must be seen that when appellee sold and assigned its system to a like corporation that could not assume and carry out its contract because prevented by the plain provision of the law, it placed itself in a position where it could not perform its contract made with Lon C. Hill, or his assigns, thereafter.

While that sale constituted a clear breach of the contract by reason of the force of the law, we are not willing, under the circumstances, to hold that it was such a breach, that appellee may not, in equity, recover pro tanto under the contract up to September 14, 1922. These services were, so to speak, performed, or, rather, what was equivalent thereto, for appellee stood ready and willing to perform its obligations and was in a position so to do had any demand been made upon it for water service. If, as we regard the law, the subsequent water improvement district was authorized to demand, levy, and assess taxes upon appellant's property from September 14, 1922, to then affirm this judgment would be equivalent to require a double payment, which no court of equity, however technical it might be, would tolerate.

We do not think there was any error of the court in foreclosing the lien on the 1,448.46 acres. Appellant did not plead nor offer any testimony, whatever, to show these lands foreclosed upon were not subject to be irrigated under the broad term of the contract.

[4] We think there is merit in appellant's contention that the court erred in the judgment of foreclosure on appellant Ball's cross-action in not determining just what amount of judgment was intended to be rendered in favor of appellant Ball over against John T. Lomax, who was the owner of the property from the 1st day of January, 1922, the date when the alleged debt accrued, to the 5th day of September, 1922, when H. Masterson, Jr., became the purchaser at foreclosure sale. Masterson paid a portion of the water claim. Appellant, under this judgment, to protect himself, might be compelled to pay the entire claim.

A final judgment should fix as nearly as possible the rights of the respective parties definitely, so as to avoid the necessity of further proceedings to determine this right. This judgment should show what amount was ratably chargeable against appellant's individual interest and how much to pay for the protection of the interest of Masterson. The judgment should be in favor of appellant against Lomax for any sum or amount that he may pay under the terms of the judgment to prevent the sale of the property. The judgment should be further corrected to provide that any balance after satisfying the claims shall be paid over to appellant Ball.

Appellee agrees, in order to cure the error in the judgment as to the amount of the recovery, that it may be so reformed as to include only $17/24$ of its present amount, and that the clause relating to the disposition of the proceeds arising from the order of sale may also be reformed as requested by appellant Ball. In reply to which, appellant Ball insists that the proper method of ascertaining the amount of reduction is to first take $17/24$ of the entire water charge against the tract of land in which appellant Ball is interested, and then credit that amount with the payment made by Masterson and render judgment only for the balance due, and not take judgment merely for $17/24$ of the whole amount.

If appellee files consent within 15 days agreeing to reform the judgment in the particulars mentioned and indicates a definite amount in accordance with the foregoing, the same will be reformed and rendered as between the parties; otherwise it will be reversed and remanded.

[5, 6] John T. Lomax complains that the court erred in not permitting him to show that the deed from John A. Hill to him on August 14, 1920, was intended as a mortgage to better secure the Farmers' State Guaranty Bank of San Benito, of which John T. Lomax is an officer, director, and stockholder; in the payment of certain indebtedness due by said John A. Hill to said bank and that he only held the legal title in trust to secure said bank in the payment of an indebtedness to it; and that he himself acquired no beneficial interest therein. The court refused to allow this proof to be made on the objection of counsel:

"On the ground that there was no pleading in this record that would warrant the introduction of any evidence tending to show that the title into Mr. Lomax was other than as the record

shows it; and on the ground that the deed shows an absolute title into said Lomax, and the testimony sought to be elicited by said question would be at variance with said deed, and that there was no evidence to support said testimony, and that said testimony was immaterial, and that the defendant Thomas H. Ball likewise objected to said question upon each and every ground upon which objection was made by plaintiff, and in addition thereto urged the further objection that, since the deed from Hill to Lomax was an absolute deed on its face, the defendant John T. Lomax is estopped, as against the defendant Thomas H. Ball, to claim that said deed was anything else than what it purported on its face to be, which objections of plaintiff and of the defendant Thomas H. Ball were then and there sustained by the court, and the defendant John T. Lomax was not permitted to answer said question propounded to him by his counsel."

If the defense of Lomax that the deed, though absolute on its face, between him and John A. Hill conveying the land, was' intended as a mere security for a debt and involved no legal liability upon him, then it was a special defense and could not be asserted upon a mere plea of general denial.

Had it been true that it was intended to be a mere security for a debt it could not possibly affect the rights of Ball, appellant, and certainly not appellee. The parties had a right to rely upon the record title, showing a plain conveyance of land, absolute on its face, from John A. Hill to John T. Lomax duly of record.

It would have been gross error in the state of the pleadings, and after the parties had entered upon the trial, to permit such testimony. If such a defense had been permitted to exonerate appellant Lomax, it would have required Ball to bring before the court for his protection the true holder of the beneficial interest in the land, thereby requiring new parties. Any defense, other than a general denial, to show an independent reason why no recovery should be had upon the case as stated, pleaded and proven, requires a special answer. Moody & Co. v. Rowland, 100 Tex. 363, 99 S. W. 1112; Irvin v. Johnson, 44 Tex. Civ. App. 436, 98 S. W. 405; De Shazo v. Eubank (Tex. Civ. App.) 191 S. W. 369; McLean v. Ellis, 79 Tex. 398, 15 S. W. 394. There was nothing to show the conditions of defeasance upon which Lomax would be required to reconvey. He was therefore the holder of the legal title to the land so far as appellant or appellee were concerned, who were in no manner parties to the deed or chargeable with knowledge of the secret understandings, and hence constituted no defense to appellant Lomax. Catlett v. Starr, 70 Tex. 485, 7 S. W. 844.

[7] Appellant John T. Lomax presents the very concrete proposition that "merely acquiring the title to land affected by the acts of a prior owner with a servient easement or a covenant running with the land does not charge the subsequent owner with any personal liability; although the land in his hands is subject to such easement or the obligations of the covenant," and in support thereof, as an axiomatic general proposition, quotes from Nalle v. Paggi (Tex.) 9 S. W. 205, 1 L. R. A. 33:

"The obligation of all contracts is, ordinarily, limited to those by whom they are made, and if privity of contract be dispensed with its 'absence must be supplied by privity of estate."

The contract sued upon fixed a definite debt, which is always required as a prerequisite to create a lien, an incident to the debt, necessary here, for the purpose of paying the price for furnishing water for irrigation purposes. Such contracts in themselves are peculiar, and may or may not have the effect of creating an easement, but are personal to the contracting parties. West v. Giesen (Tex. Civ. App.) 242 S. W. 312.

It had the effect to create an easement in favor of the Hill lands against the irrigation company properties, subject to the obligation on the part of Lon C. Hill and his successors in interest, each of whom assumed his obligation to pay yearly water charges.

The rights of the Rio Grande Canal Company against the subsequent owners under Lon C. Hill may or may not exist by virtue of a covenant running with the land, but in equity, at least, the obligation to pay arises on the theory that the existence of the contract with which they are in privity of estate, as they are here contributors to the real use and enjoyment of the property. 7 R. C. L. p. 1125, § 39; Sjoblom v. Mark, 103 Minn. 193, 114 N. W. 746, 15 L. R. A. (N. S.) 1129, 14 Ann. Cas. 125.

A very careful investigation inclines us to believe that the contract in question is a covenant created by mutual obligation running with the land of privity of estate, and enforceable as such, as well as one enforceable in equity against subsequent purchasers with notice, actual or constructive. The default of the payment of the charges occurred during the ownership of appellant Lomax, which brought into existence the lien sought to be foreclosed.

As between a person primarily liable for the debt and one who is only liable by reason or the fact that he was compelled to pay off the existing lien, to save his property from sale thereunder, entitled him to reimbursement and indemnity from him whose default creates the obligation. Pomeroy, Equity Jurisprudence (4th Ed.) vol. 5, pp. 5, 63, § 2335; 37 Cyc. p. 443; Fears v. Albea, 69 Tex. 440, 6 S. W. 286, 5 Am. St. Rep. 78; Lewis v. Powell (Tex. Civ. App.) 205 S. W. 737; Harris v. Masterson, 91 Tex. 171, 41 S. W. 482.

We find no merit in the assignments of appellant Lomax, and they are overruled.

For the errors herein pointed out, unless a remittitur is filed as herein indicated within 15 days, so that the judgment may be reformed and rendered, it will be reversed and cause remanded to be disposed of as herein indicated.

Reversed and remanded unless remittitur is filed.

### On Appellees' Motion for Rehearing.

In this case the appellees filed their motion agreeing to amend the motion in the particulars mentioned in our opinion, but the tender to do so was met by a motion by appellant Ball for a rehearing on the whole case, with a prayer for the rendition of the judgment in his favor. Likewise, John T. Lomax, appellant, filed a motion for a rehearing and praying a reversal of the case as to him.

For the reasons given in the opinion of the court in this case, no proper judgment can be here rendered. The judgment of the trial court is reversed, and the cause is remanded for a new trial between all the parties.

Reversed and remanded.

### On Appellants' Motion for Rehearing.

On account of the difficulty this court found in rendering a judgment for a definite amount, the cause was ordered reversed unless the Rio Grande Canal Company filed a remittitur within 15 days, stating the amount remitted; which it attempted to do, but did not state a lump or definite sum. In view of that fact, appellant Ball, instead of meeting that situation as to any definite amount that should be remitted, filed a general motion for a new trial. So did appellant Lomax file his motion for a rehearing, whereupon we remanded the entire cause for a new trial.

Appellant Ball now files a second motion for rehearing, insisting that we should enter judgment for the amount indicated by the remittitur of the Rio Grande Canal Company, and that company likewise has filed its motion for a rehearing and joins Ball in his motion that the judgment be entered in accordance with the original opinion of this court for the amount indicated in the remittitur.

The motion of appellant John T. Lomax for a rehearing was heretofore overruled; but in view of the fact that his time to apply for a writ of error, if he should so desire, may be jeopardized by this ruling, we again consider and overrule his motion as of this date.

The second motion of appellant Ball, in all other respects than as to the amount of the judgment, is overruled.

The Rio Grande Canal Company in its motion said that it files "this its remittitur in said cause, and here now agrees to a reduction of said judgment, and authorizes your honorable court to reduce the amount recovered in the trial court as follows: To reduce the total amount specified in the judgment from $2,390.82 to $874.17, and to reduce the amount of principal and interest from $2,173.47 to $794.70, and to reduce the attorney's fees from $217.35 to $79.47."

Our judgment remanding the cause for another trial, therefore, is set aside, and the judgment of the trial court, consequently, is here now reversed, amended, and reformed so that appellee Rio Grande Canal Company do have and recover of and from all the appellants the sum of $874.17, with interest from the date of the judgment of the trial court.

The judgment is also reformed in favor of appellant Thomas H. Ball against John T. Lomax, so that for any sum of money the said Ball may be compelled to pay under the terms of this judgment to prevent the sale of his property in satisfaction thereof, he shall have his judgment over against the said John T. Lomax.

The judgment is further corrected and reformed, so that any balance remaining after satisfying the claims shall be paid over to appellant Thomas H. Ball.

The judgment, after being so reformed, is affirmed.

Reformed and affirmed.