CLARK et al. v. GREAT NORTHERN RY. CO. et al.

(Circuit Court, D. Washington, E. D. May 12, 1897.)

1. RAILROADS—CONTRACT TO GIVE CITY "TERMINAL RATES."
   A contract by a railroad company to carry freight to a certain city at "terminal rates" if "the people" of the city would furnish a right of way through the city, alleged to have been accepted by "complainants and others," is unenforceable because of uncertainty as to parties, and as to the service promised, and also for want of mutuality.

2. CONTRACTS—UNCERTAINTY AS TO PARTIES.
   A promise by an indefinite and unidentified number of persons to jointly do a particular thing cannot be enforced, as the promisee will not be permitted to proceed against selected persons to compel them to do by themselves what they have only promised to assist others in doing.

3. SAME—WANT OF MUTUALITY.
   As a contract, to be enforceable, must be mutual, a contract dependent on a nonenforceable promise cannot itself be enforced.

4. SAME—PARTIES TO ACTION FOR RESCISSION.
   Where a number of persons have jointly contributed to procure a right of way for a railroad through a city in consideration of the company's agreement to give certain rates, all must join in a suit to rescind the contract for failure of the company to comply.

Suit by F. Lewis Clark and others against the Great Northern Railway Company and others to enforce specific performance of a contract.

F. H. Graves, for complainants.
Will H. Thompson, for defendants.

HANFORD, District Judge. This is a suit to compel the defendants to specifically perform an alleged contract whereby they promised, in consideration of receiving, free of expense to them, a right of way for their line of railway through the city of Spokane, to give to the people of Spokane and vicinity the benefit of transportation of through freight from the east at terminal rates. The bill of complaint avers that after some preliminary and preparatory work on the part of Mr. James J. Hill, a high official of the defendant companies, by representations made to citizens of Spokane there was a meeting between Mr. Hill and a large number of representative citizens, at which meeting Mr. Hill formally offered to locate the line of the Great Northern Railway through Spokane, and to build said line, and, when completed, to carry freight by said line from its eastern terminal to Spokane at terminal rates, if the people of Spokane would furnish a right of way through the city free of expense to the railway companies; that the complainants and others accepted

said offer, and agreed to procure said right of way, and that they each made contributions of money or land, and solicited contributions from others, and in that way procured and paid for said right of way, and caused the same to be conveyed to the defendants, except a portion thereof not yet definitely located; and that the defendants, with full knowledge of the facts, have accepted said right of way, and have built upon part of it, and now occupy and use the same. The complainants aver that they are able, willing, and ready to fully perform their agreement in such manner as the court may decree, and that the defendants, having completed their line of railway to Seattle in 1893, have nevertheless refused, and still refuse, to deliver freight at Spokane from eastern points at terminal rates, but, on the contrary, in disregard of the promise so made by Mr. Hill, they persist in charging rates to Spokane much in excess of the rates on through shipments to Seattle and other places having the benefit of terminal rates. Therefore the complainants pray for a decree compelling the defendants to specifically perform said alleged contract, or, if that is impractical, then that the right of way conveyed as aforesaid be forfeited and conveyed back to the donors. The case has been argued and submitted upon a demurrer to the bill.

I will not volunteer an opinion upon questions which were argued, but which I find do not necessarily have to be considered in arriving at my conclusion. My opinion is adverse to complainants on two points, and on these grounds the demurrer must be sustained. In the first place, I find that the contract as pleaded is not enforceable, because it is too indefinite and uncertain as to parties, and as to the service promised on the part of the railway companies, and for want of mutuality. The fundamentals of a legal contract are parties, subject-matter, consideration, and assent. There can be no contract if any one of these elements is lacking, and, to enforce a contract by legal proceedings, it is necessary to set forth the contract with precision and certainty, so as to show a complete contract. Now as to parties. A promise made to everybody is not a promise to any person; and a promise by a multitude, or an indefinite and unidentified number of individuals, to jointly do a particular thing, cannot be enforced. In such a case the promisee will not be permitted to proceed against selected persons to compel them to do by themselves what they have only promised to assist others in doing. Then, to make a valid contract, it must be assented to; that is, there must be a meeting of minds, so that each party bound gives his assent to the same thing. It is necessary, therefore, that the extent and limitations and conditions of the offer made on one side and accepted on the other shall be defined, so that it may appear that something definite has been agreed to by all the parties. And a contract, to be enforceable, must have the quality of mutuality; for one or several persons who could not be compelled to perform a promise may not compel others to fulfill a promise dependent upon such nonenforceable promise. To whom did Mr. Hill promise that the railroad would carry freight at terminal rates, and who agreed to furnish the right of way? We must look to the bill of complaint to find the answer to these questions, and there we can only find that the sev-

eral complainants and others accepted Mr. Hill's offer, and agreed to furnish the right of way, and contributed to that object, and caused the right of way to be conveyed. But whether those who accepted the offer and agreed to furnish the right of way were to have the benefit of terminal rates for themselves, or whether all the people then living in Spokane and the surrounding country should share equally in the benefit, or whether the community as it was then constituted, together with all who have since cast in their lot and become members, and all who are yet to come, are to be favored with terminal rates, cannot be determined. But whether the broadest or the narrowest rule of construction be applied, or the middle ground be taken, it is equally impossible to find that the parties on the Spokane side of the agreement ever placed themselves in a situation to be compellable to do anything. For the same reason, they cannot maintain a suit to enforce the contract against the railroad party. In the second place, the complainants are not authorized to maintain a suit to recover the right of way. Others having equal rights with them in the subject may elect to retain whatever advantage there may be to them of having this transcontinental railway enter Spokane, even at the expense of waiving performance of the promise as to terminal rates. As such election by any one of the contributors must necessarily defeat a recovery, it is necessary to the maintenance of a suit with that object that every one of the contributors should be joined as a plaintiff. I consider that the bill, whether regarded as one for specific performance or for rescission of the contract, cannot be sustained, and therefore it must be dismissed.