**BECKHAM v. WARD COUNTY IRR. DIST. NO. 1. (No. 1818.)***

(Court of Civil Appeals of Texas. El Paso. Nov. 19, 1925. Rehearing Denied Dec. 17, 1925.)

**1. Deeds ☞145—Agreement by irrigation district to construct and maintain flume across canal held covenant.**

Agreement by irrigation district, contained in conveyance to it of right of way, to construct and maintain a flume across its canal to permit water to be carried over it to land of grantor beyond, *held* a covenant and not a condition or conditional limitation.

**2. Waters and water courses ☞154(1)—Right of way and right of receiving water are servitudes which may be attached to lands as appurtenances.**

Right of way and right of receiving water from and over other lands are burdens or servitudes in arid communities which may be attached to other lands as incidents or appurtenances thereto.

**3. Waters and water courses ☞156(8)—Covenant to construct and maintain flume across canal for grantor held to run with land.**

Agreement, in conveyance of strip of land to irrigation district as a right of way for a canal, that a flume would be constructed across canal to enable grantor to convey water for irrigation of his other lands, *held* one running with the land, though personal in form.

On Motion for Rehearing.

**4. Covenants ☞21—Basic rule for interpretation of covenant is to gather intention of parties from words used.**

The basic rule for interpretation of a covenant is to gather the intention of the parties from the words used, by reading not simply a certain clause of the instrument, but the entire context.

**5. Covenants ☞21—Intent of parties to covenant of doubtful meaning is gathered by considering such surrounding circumstances as parties are presumed to have considered.**

The intent of the parties to a covenant of doubtful meaning is gathered by considering such surrounding circumstances as the parties are presumed to have considered when their minds met and the instrument was executed.

**6. Covenants ☞53—Covenants running with land are those generally affecting land itself and conferring benefit on grantor.**

Covenants running with the land and inuring to the benefit of the assignee are those generally affecting the land itself and conferring a benefit on the grantor.

Appeal from District Court, Ward County; Chas. Gibbs, Judge.

Action by E. J. Beckham against Ward County Irrigation District No. 1. From a judgment sustaining a general demurrer and dismissing the petition, plaintiff appeals. Reversed and remanded.

H. G. Russell, of Pecos, for appellant.
Birge Holt, of Barstow, for appellee.

WALTHALL, J. E. J. Beckham, appellant, brought this suit against appellee, Ward County irrigation district No. 1, and against Ward County irrigation district No. 3 (but subsequently dismissed as to district No. 3), to recover damages to his growing crop of cotton, alleged to have been sustained by him by reason of the failure of appellee district No. 1 to maintain a certain flume constructed over the main line canal of appellee district No. 1.

Appellant, having purchased the B. T. Biggs lands lying on either side of the canal over which the flume was to be constructed and maintained, bases his suit upon a certain instrument in writing made an exhibit to his petition and is in words and figures substantially as follows:

"The State of Texas, County of Ward.

"Know all men by these presents: That I, B. T. Biggs, of the county of Reeves, state of Texas, for and in consideration of the sum of one thousand dollars to me in hand paid by the Ward County irrigation district No. 1, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Ward County irrigation district No. 1, of the county of Ward, state of Texas, all that certain tract of land described as follows:

"Being a tract of land to be used as a right of way for an irrigation canal and being 130 feet wide, being all that parcel or strip of land 130 feet in width, being 65 feet on each side of, and parallel to the following described center line of the Rocky Ford Canal across the N. W. part of section 55, block 33, H. & T. C. Ry. Co. survey in Ward county, Texas.

"Said line beginning at a point in the line between sections 55 and 56, said block, from which an original stone mound at the N. Corner of said section 55, bears N. 40 E. 6041.7 feet: thence S. 15 39′ E. 2,322.1 feet to a point in the S. E. line of said B. T. Biggs tract from which the east corner of said tract bears N. 40 E. 2,066 feet, said tract containing 6.93 acres.

"Ward County irrigation district No. 1, shall build and maintain one wagon bridge across said canal on the land now owned by B. T. Biggs, at a point to be agreed upon. A flume will be constructed and maintained on the north side of the land across said canal for the purpose of said B. T. Biggs, conveying water for the irrigation of his lands lying on the west side of said Rocky Ford Canal.

"The consideration hereinabove stated was paid in a ——— of the grantee, said bond being dated May 8, 1914, and maturing on the 8th day of May, 1922. It is agreed that the grantor has the privilege of running his fences across said canal until such time as said bond is paid or said Biggs sells same, but that in the event such fences are built across said canal that gates shall be provided so that the agents of the grantee can travel along the roads to be constructed along said canal for their own use.

---
☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused February 10, 1926.

When said bond is so paid or same is sold by said Biggs then he shall remove said fences across said canal and shall construct a fence between his land and said right of way on both sides of said canal. Any such fence built across said canal shall be above the water line and shall be so constructed as not to obstruct the flow of water in said canal.

"To have and to hold the above-described premises together with all the rights and appurtenances thereto in any wise belonging unto the said Ward County irrigation district No. 1, heirs and assigns forever. And I do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said Ward County irrigation district No. 1, heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at Pecos, Texas, this 26th day of December, 1917.　　B. T. Biggs.

"Certificate of acknowledgment is in compliance with the statutes. Taken by T. H. Beauchamp, N. P., Reeves Co., Tex. 11/26/1917. [No seal shown.]

"Filed for record Jan. 3, 1918, and recorded in Vol. 21, page 411, Deed Records, Ward County, Texas."

Appellee presented, and the trial court sustained, a general demurrer to appellant's petition, and appellant refusing to amend the suit was dismissed. The correctness of the court's ruling on the general demurrer presents the only question for our consideration. The petition is sufficient, we think, as against a general demurrer.

The question presented is a proper construction of the clause in the instrument reading: "A flume will be constructed and maintained on the north side of the land across said canal for the purpose of said B. T. Biggs, conveying water for the irrigation of his land lying on the west side of said Rocky Ford Canal." Is this a covenant that runs with the land, so as to inure to the benefit of appellant as the vendee of Biggs, and give appellant, not named in the instrument, nor otherwise showing any privity of interest with Biggs in the matters involved, a right of action against appellee for failure to maintain the flume? Or is the undertaking of appellee to maintain the flume, when constructed, a collateral undertaking, personal to Biggs, which does not run with the land demised?

The petition alleged that appellee is an irrigation district duly organized under the laws of this state, and that appellant is the owner of the land in controversy, describing the two tracts by metes and bounds, and that the land is situated in Ward County water improvement district No. 3, and is susceptible to irrigation therefrom, and is entitled to the use of the water diverted by district No. 3 for irrigation; that district No. 3 and district No. 1 are each entitled to divert the water from the Pecos river to lands lying within their respective boundaries for specified days in each month. The petition then sets out the instrument copied above upon which he bases his cause of action, and alleges that appellant noticed said flume was in bad state of repair and in danger of falling in, thereby obstructing the flow of the water in his intake ditches formerly used by Biggs and now by appellant for watering his said lands, and so notified appellee, who pretended to fix said flume, and assured appellant that it had been and would be fixed and maintained; that later when district No. 3 was diverting the water, and at the time when appellant's turn to use said water came, he received the water and undertook to convey it across said flume to said 80 acres of cotton; that the flume broke and caved in, thereby cutting off appellant from diverting said water; that said flume had not been mended and properly fixed, and appellant thereby lost the use of the water on his cotton to his damage as alleged.

[1] The instrument expresses an agreement on the part of appellee and Biggs to construct and maintain the flume and is a covenant and not a condition, or a conditional limitation.

Gulf, C. & S. F. Ry. Co. v. Smith et al., 72 Tex. 122, 9 S. W. 865, 2 L. R. A. 281 to which we are referred, is where a deed to a right of way had granted, and in which the railway company grantee agreed in the deed to construct and maintain, a lawful stock fence along the right of way next to a pasture and used for a pasture for stock. The deed was made by one Bryan, and thereafter the pasture land was conveyed to T. E. Smith and Rucker, and thereafter Rucker conveyed to T. E. Smith, who, with O. P. Smith, owners of the land at the filing of the suit, sued the railway company for damages resulting on account of failure to erect and maintain the fence.

The court in deciding that case applied the rule announced in Spencer's Case, 3 Coke, 31, which the court recognized as the leading authority at that time upon the subject, and which announced the rule to be that—

"When the covenant extends to a thing in esse, part of the demise, the thing to be done by force of the covenant is annexed and appurtenant to the thing demised, and shall go with the land, and bind the assignee, though he be not bound by express words; but when the covenant extends to a thing which is not in being at the time of the demise made, it cannot be appurtenant or annexed to the thing which has no being."

The court further remarked:

"Those covenants which are held to run with the land, and inure to the benefit of the assignee, are such as generally affected the land itself, and conferred a benefit on the grantor."

In that case the court held that it appeared from the language of the contract or covenant that it was intended to protect stock from injury by the railroad, rather than confer a

benefit upon the grantor, affecting the land itself; that it was contingent and necessarily temporary in its application, and that no cause of action would be in Smith by reason of the said deeds.

[2] The purpose of the covenant, as expressed in the instrument itself, was for the purpose of said Biggs conveying water for the irrigation of his lands, stating their location, thus a direct benefit to the grantor. The instrument grants a right of way over said land and divides the land into two parcels. The right of way and the right of receiving water from and over other lands are among the burdens or servitudes in arid communities which may be attached to other lands as incidents or appurtenances thereto. It seems to us that while the covenant is personal in form to Biggs, this is not necessarily controlling in view of the expressed purpose of conveying water for the irrigation of lands other than the land granted for right of way. The statement in the instrument that the water to be conveyed was "for the purpose of said Biggs conveying water for lands lying on the west side of the Rocky Ford Canal" would seem more to indicate the lands to be watered and their situation, rather than to express the purpose of confining the use of the water to the then owner of the lands.

[3] If we are not in error in our reasoning as above, it follows that it was the intent of the parties to the covenant expressed in the instrument to create or reserve a right in the nature of a servitude or easement in the property granted for the benefit of the lands owned by the grantor, Biggs, and binding on that conveyed to the district No. 1, and that the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective parcels of land. 2 Wash. Real Prop. (6th Ed.) pp. 284 and 285.

We have concluded the trial court was in error in sustaining the general demurrer.

Reversed and remanded.

## On Motion for Rehearing.

In its motion for rehearing appellee insists that our opinion is in direct conflict with the decison of the Supreme Court of this state in Railway v. Smith, 72 Tex. 122, 9 S. W. 865, 2 L. R. A. 281, and referred to and from which we quoted in the opinion.

In writing the opinion we made a very careful study of that case, and the references made to it by text-writers, in stating examples of personal covenants as distinguished from specific covenants of title regarded as real or running with the land. The courts are not uniform in their holdings as to whether a stipulation in a contract or deed for right of way to construct and maintain a fence is purely personal as between the parties themselves, or is a covenant affecting realty and running with the land and vest in point of benefit and liability in an assignee, or party, holding in privity of interest in the realty.

[4, 5] The basic rule for the interpretation of a covenant contained in a deed is to gather the intention of the parties from the words used, by reading, not simply a single clause used in the instrument, but the entire context, and where the meaning is doubtful by considering such surrounding circumstances, as the parties are presumed to have considered when their minds met in executing the instrument. Of course, unless the deed to the right of way has some element of a covenant which runs with the land, it cannot be made the basis of the action.

[6] We think we need not enter into an extensive discussion as to the distinction between real and personal covenants, more then to say that those covenants which are held to run with the land and inure to the benefit of the assignee are such as generally affect the land itself and confer a benefit on the grantor. 7 R. C. L. p. 1104, par. 20, and note 18. See, also, other definitions and distinctions between real and personal covenants, 15 C. J. p. 1220 et seq.

As said by Judge Hobby in Railway v. Smith, supra, they are such covenants as affected the land itself and conferred a benefit on the grantor. It is said in 7 R. C. L. at page 1110, par. 26, that covenants as to water, ditches, build levees, or drains, and to maintain them, generally run with the land. See, also, 2 Devlin on Deeds (2d Ed.) par. 940, p. 1296. We see no reason why an agreement that a flume will be constructed and maintained across the canal of a water company, so that the water from another water district flowing in appellant's intake ditches may pass through to said land beyond, should not be a covenant that runs with the land.

It seems to us quite evident that the clause in the deed for the right of way that the appellee water district in building its canal over and across the land in question, thus dividing it into two parts, should construct and maintain a passageway for the water thereby to get to one of the parts of the land, otherwise cut off from the use of the water for irrigation, is a covenant running with the land granted. There seems to us no element of a personal use of the water to Biggs, but the use of the flume was for the benefit of Biggs' land referred to in the agreement, and has every element of a real covenant.

The motion is overruled.